SEND

ENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CATHY JOHNSON,                          )       No. EDCV 05-0793-RC
                                        )
          Plaintiff,                    )
                                        )       OPINION AND ORDER
     v.                                 )
                                        )
MICHAEL J. ASTRUE,[1]                   )
Commissioner of Social Security,        )
                                        )
          Defendant.                    )
_____ )

     Plaintiff Cathy Johnson filed a complaint on August 24, 2005, seeking review of the Commissioner's decision denying her applications for disability benefits.  The Commissioner answered the complaint on January 26, 2006, and the parties filed a joint stipulation on March 21, 2006.

**BACKGROUND**

**I**

     On July 25, 1996, plaintiff applied for disability benefits under

_____

     [1]  Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

1   both Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and

2   the Supplemental Security Income program ("SSI") of Title XVI of the

3   Act, 42 U.S.C. § 1382(a), claiming an inability to work since

4   September 3, 1993, due to headaches, dizziness, forgetfulness, and

5   pain in her back, side, leg and knee.  Certified Administrative Record

6   ("A.R.") 77-79, 88, 261-63.  The plaintiff's applications were

7   initially denied on October 9, 1996, and were again denied on

8   February 14, 1997, following reconsideration.  A.R. 58-68.  The

9   plaintiff then requested an administrative hearing, which was held

10  before Administrative Law Judge Paul D. Tierney ("ALJ Tierney") on

11  May 5, 1998.  A.R. 33-55, 69-70.  On May 21, 1998, ALJ Tierney issued

12  a decision finding plaintiff is not disabled.  A.R. 15-23, 642-50.

13  The plaintiff appealed this decision to the Appeals Council, which

14  denied review on February 11, 2000.  A.R. 9-14.

15

16       On March 8, 2000 (protective filing date), plaintiff filed a new

17  application for SSI benefits, which was denied initially on July 6,

18  2000, and denied again on August 31, 2000, following reconsideration.

19  A.R. 348-57, 368-76.  The plaintiff then sought an administrative

20  hearing before an administrative law judge.  A.R. 359.

21

22       On March 20, 2000, plaintiff filed her first complaint seeking

23  review of the Commissioner's decision denying her 1996 applications

24  for disability benefits, and, pursuant to the parties' stipulation,

25  Judgment was entered remanding Johnson I to the Social Security

26  Administration ("SSA") for further proceedings on September 11, 2000.

27  //

28  //

1  Johnson v. Apfel, EDCV 00-0169-RC ("Johnson I").[2]  On November 14,

2  2000, the Appeals Council remanded the matter for further proceedings.

3  A.R. 364-66.

4

5       On October 15, 2001, Administrative Law Judge F. Keith Varni

6  ("the ALJ") held a new administrative hearing, consolidated

7  plaintiff's remanded applications with her new application for SSI

8  benefits, and on October 26, 2001, denied all applications.  A.R. 314-

9  24, 330-45.  The plaintiff appealed this decision to the Appeals

10  Council, which declined to assume jurisdiction on June 17, 2003.  A.R.

11  304-313B.

12

13       On July 25, 2003, plaintiff filed her second complaint seeking

14  review of the Commissioner's decision denying her applications for

15  disability benefits, and on September 22, 2004, following a written

16  decision by this Court, Judgment was entered again remanding the

17  matter to SSA for further proceedings pursuant to sentence four of 42

18  U.S.C. § 405(g).  Johnson v. Apfel, EDCV 00-0169-RC ("Johnson II").[3]

19  In reaching its decision, this Court held the ALJ "failed to provide

20  specific and legitimate reasons for rejecting the opinions of

21  [plaintiff's treating physicians] Drs. Thomas and Thacker, and his

22  determination that plaintiff does not have a severe mental impairment

23  is not supported by substantial evidence."  On October 15, 2004, the

24  Appeals Council again remanded the matter to the ALJ for further

25  _____

26       [2]  Pursuant to Fed. R. Evid. 201, this Court takes judicial
27  notice of all documents in Johnson I.

28       [3]  Pursuant to Fed. R. Evid. 201, this Court takes judicial
    notice of all documents in Johnson II.

proceedings, A.R. 680-82, and on June 16, 2005, the ALJ again found plaintiff is not disabled.  A.R. 654-65.

## II

In Johnson II, this Court found that "plaintiff, who was born on November 1, 1960, is currently 46 years old.  She has a high school education, has received training as a medical assistant, and has previously worked as an assembler, account supervisor, production worker, trailer repair technician, board cutter, and an in-home health care provider."  This Court further set forth the following summary of plaintiff's mental condition:[4]

On July 28, 1995, plaintiff gave birth to a son.  Between July 11, 1996, and January 9, 1997, T. Ramos, M.D., treated plaintiff for various physical conditions and mental problems, diagnosing her as suffering from stress and depression and prescribing for her Serzone and Zoloft for those conditions.  On July 30 and October 30, 1996, Dr. Ramos found plaintiff had headaches, stress and depression and was temporarily disabled through January 30, 1997.  [¶] On September 10, 1996, Reynaldo Abejuela, M.D., a psychiatrist, diagnosed plaintiff with mild depression, by history, and found "[t]here are no limitations due to emotional impairment and no restriction in daily activities."  Dr. Abejuela also found plaintiff "can do

---

[4]  Although plaintiff has numerous physical complaints, in Johnson II, and here, she challenged only the ALJ's assessment of her mental condition.

1    simple, repetitive tasks and can sustain this for an eight-
2    hour period." [¶]  On January 28, 1997, Carol L. Lewis-
3    Wintrode, Ph.D., a licensed clinical psychologist, conducted
4    psychological testing on plaintiff and diagnosed her with
5    depression.  Dr. Lewis-Wintrode concluded, in part, that
6    plaintiff "may have mild difficulty persisting independently
7    at work-related activities due to decrease in memory and
8    concentration.  This is primarily related to her
9    preoccupation with numerous physical complaints.  She can
10   learn simple tasks.  She would need a structured,
11   nonstressful work environment." [¶]  Between October 25,
12   1999, and March 20, 2001, Cynthia L. Thomas, D.O., treated
13   plaintiff for major depression and various physical problems
14   and prescribed Celexa and Trazodone to plaintiff.  On
15   April 3, 2000, Dr. Thomas determined plaintiff had a Global
16   Assessment of Functioning ("GAF") of 60 (highest within the
17   last year 60), poor memory and appetite, sleep and mood
18   disturbances, emotional lability, recurrent panic attacks,
19   social withdrawal or isolation, decreased energy, anhedonia
20   or pervasive loss of interests, psychomotor retardation,
21   feelings of guilt/worthlessness, and difficulty thinking or
22   concentrating.  Dr. Thomas found plaintiff had a severe
23   impairment in memory and concentration, emotional lability,
24   was socially withdrawn, and plaintiff's depression
25   interfered with her pain tolerance and energy level and
26   caused sleep problems.  Dr. Thomas opined plaintiff was not
27   a malinger, and her impairments were reasonably consistent
28   with her symptoms and functional limitations.  Dr. Thomas

1   further opined plaintiff would have difficulty working at a
2   regular job on a sustained basis because she was unable to
3   function in her daily activities and her condition would
4   cause her to miss work more than three times a month.
5   Finally, Dr. Thomas evaluated plaintiff's mental state,
6   finding plaintiff had:  "extreme" restrictions of daily
7   activities; "marked" difficulty maintaining social
8   functioning; "constant" deficiencies of concentration,
9   persistence, or pace resulting in failure to complete tasks
10  in a timely manner; and "continual" episodes of
11  deterioration or decompensation in work or work-like
12  settings causing her to withdraw from that situation or to
13  experience exacerbation of signs and symptoms.  [¶]  On
14  June 30, 2000, R. Forde, M.D., a nontreating, nonexamining
15  physician, found plaintiff is "moderately" limited in her
16  ability to understand, remember and carry out detailed
17  instructions, but is otherwise not significantly limited,
18  and completing a Psychiatric Review Technique Form ("PRTF"),
19  analyzed plaintiff under the Part A criteria for affective
20  disorders (Listing 12.04) and found she had major
21  depression[.]  Dr. Forde then evaluated plaintiff under the
22  Part B criteria and concluded:  she has "moderate"
23  restriction in the activities of daily living; "moderate"
24  difficulties maintaining social functioning; "seldom"
25  experiences deficiencies of concentration, persistence or
26  pace resulting in failure to complete tasks in a timely
27  manner (in work settings or elsewhere); and there was
28  "insufficient evidence" to determine whether plaintiff had

experienced episodes of deterioration or decompensation in
work or work-like settings causing her to withdraw from that
situation or to experience exacerbations of signs and
symptoms.  On August 28, 2000, K. Gregg, M.D., re-affirmed
Dr. Forde's opinions.  [¶]  On August 1, 2000, Swati
Thacker, M.D., evaluated plaintiff at the San Bernardino
County Department of Behavioral Health ("SBDBH") and
diagnosed her as having a depressive disorder, not otherwise
specified, determined plaintiff's GAF to be 40, and
prescribed Paxil, Risperdal, and Trazodone.  When initially
evaluated, plaintiff was experiencing recent memory
problems, had a poor attention span, suffered auditory and
visual hallucinations, had feelings of hopelessness with
suicidal ideation, was irritable and had mood swings, had
low self esteem, anhedonia, indecisiveness, lacked
motivation, and tolerated stress poorly.

(citations and footnotes omitted).

The medical evidence produced subsequent to the remand of
Johnson II shows the following:  On January 12, 2004, Han V. Nguyen,
M.D., examined plaintiff at SBDBH and diagnosed her with a recurrent
severe major depressive disorder, with psychotic features, and
determined her GAF to be 45.[5]  A.R. 752.  On October 12, 2004, he

---

[5]  A GAF of 41-50 means that the plaintiff exhibits
"[s]erious symptoms (e.g., suicidal ideation, severe obsessional
rituals, frequent shoplifting) or serious impairment in social,
occupational, or school functioning (e.g. no friends, unable to
keep a job)."  American Psychiatric Ass'n, <u>Diagnostic and</u>

diagnosed plaintiff with a recurrent severe major depressive disorder, with psychotic features, and at that time determined her GAF to be 48 (highest within past year 55).[6]  A.R. 732-35.  Dr. Nguyen treated plaintiff through February 2, 2005.  A.R. 753-60, 822-26.  Dr. Nguyen opined plaintiff has a poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, delusions or hallucinations, perceptual disturbances, decreased energy, anhedonia or pervasive loss of interests, paranoia or inappropriate suspiciousness, and difficulty thinking or concentrating.  A.R. 732-33.  Dr. Nguyen noted plaintiff was taking Paxil,[7] Seroquel,[8] and Trazodone,[9] and these medications could cause dizziness and lethargy.  A.R. 734.  Dr. Nguyen further opined plaintiff has "moderate"

---

Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

   [6]  A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

   [7]  "Paxil is prescribed for a serious, continuing depression that interferes with [the] ability to function.  Symptoms of this type of depression often include changes in appetite and sleep patterns, a persistent low mood, loss of interest in people and activities, decreased sex drive, feelings of guilt or worthlessness, suicidal thoughts, difficulty concentrating, and slowed thinking."  The PDR Family Guide to Prescription Drugs, 492 (8th ed. 2000).

   [8]  "Seroquel combats the symptoms of schizophrenia, a mental disorder marked by delusions, hallucinations, disrupted thinking, and loss of contact with reality."  Id. at 610.

   [9]  Trazodone, also called Desyrel, "is prescribed for the treatment of depression."  Id. at 198, 690.

8

restrictions in her activities of daily living, "marked" difficulty maintaining social functioning, "frequent" deficiencies of concentration, persistence or pace and has had "repeated" episodes of decompensation.  A.R. 735.  Additionally, Dr. Nguyen opined plaintiff has poor memory and concentration that would make it difficult for her to work at a regular job on a sustained basis and she would miss more than 3 days of work a month due to her impairments.  A.R. 734.

On March 8, 2005, Linda M. Smith, M.D., a psychiatrist, examined plaintiff and diagnosed her with an unspecified mood disorder and determined plaintiff's GAF to be 68.[10]  A.R. 802-09.  Dr. Smith opined plaintiff "may indeed have some depressed mood because of possible ongoing pain"; however, Dr. Smith found plaintiff "was not very credible at all throughout the interview" and "[m]ost of her claims did not appear to be very believable."  A.R. 808.  Indeed, Dr. Smith found plaintiff "appeared vague and evasive at times and fairly manipulative at times" and "[s]he made 'mistakes' on the mental status exam which may not have actually been credible mistakes."  Id.  Dr. Smith opined plaintiff may be "very slightly" impaired in her ability to interact appropriately with supervisors, co-workers or the public due to some possible interference from her angry and depressed mood, but otherwise she was not impaired.  A.R. 808-09, 811-12.

//

---

[10]  A GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

1       **DISCUSSION**

2       **III**

3       The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

4   review the Commissioner's decision denying plaintiff disability

5   benefits to determine if his findings are supported by substantial

6   evidence and whether the Commissioner used the proper legal standards

7   in reaching his decision.  <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th

8   Cir. 2007); <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.

9   2006).

10

11      The claimant is "disabled" for the purpose of receiving benefits

12  under the Act if she is unable to engage in any substantial gainful

13  activity due to an impairment which has lasted, or is expected to

14  last, for a continuous period of at least twelve months.  42 U.S.C. §§

15  423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

16  "The claimant bears the burden of establishing a prima facie case of

17  disability."  <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995),

18  <u>cert.</u> <u>denied</u>, 517 U.S. 1122 (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273,

19  1289 (9th Cir. 1996).

20

21      The Commissioner has promulgated regulations establishing a five-

22  step sequential evaluation process for the ALJ to follow in a

23  disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**,

24  the ALJ must determine whether the claimant is currently engaged in

25  substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

26  If not, in the **Second Step**, the ALJ must determine whether the

27  claimant has a severe impairment or combination of impairments

28  significantly limiting her from performing basic work activities.  20

C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ
must determine whether the claimant has an impairment or combination
of impairments that meets or equals the requirements of the Listing of
Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20
C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the
ALJ must determine whether the claimant has sufficient residual
functional capacity despite the impairment or various limitations to
perform her past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not,
in **Step Five**, the burden shifts to the Commissioner to show the
claimant can perform other work that exists in significant numbers in
the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Where there is evidence of a mental impairment that may prevent a
claimant from working, the Commissioner has supplemented the five-step
sequential evaluation process with additional regulations addressing
mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d
913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine
the presence or absence of certain medical findings relevant to the
ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).
Second, when the claimant establishes these medical findings, the ALJ
must rate the degree of functional loss resulting from the impairment
by considering four areas of function: (a) activities of daily living;
(b) social functioning; (c) concentration, persistence, or pace; and
(d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(2-4),
416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ
must determine whether the claimant has a severe mental impairment.
20 C.F.R. §§ 404.1520a(d), 416.920a(d).  Fourth, when a mental
impairment is found to be severe, the ALJ must determine if it meets

11

1 or equals a Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).
2 Finally, if a Listing is not met, the ALJ must then perform a residual
3 functional capacity assessment, and the ALJ's decision "must
4 incorporate the pertinent findings and conclusions" regarding
5 plaintiff's mental impairment, including "a specific finding as to the
6 degree of limitation in each of the functional areas described in [§§
7 404.1520a(c)(3), 416.920a(c)(3)]."  20 C.F.R. §§ 404.1520a(d)(3),
8 (e)(2), 416.920a(d)(3), (e)(2).

9

10    Applying the five-step sequential evaluation process, the ALJ
11 found plaintiff has not engaged in substantial gainful activity since
12 the alleged onset of disability.  (Step One).  The ALJ then found
13 plaintiff's obesity is considered a severe impairment; however, she
14 does not have a severe mental impairment.  (Step Two).  Additionally,
15 plaintiff does not have an impairment or combination of impairments
16 that meets or equals a Listing.  (Step Three).  The ALJ next
17 determined plaintiff is unable to perform her past relevant work.
18 (Step Four).  Finally, the ALJ concluded plaintiff can perform a
19 significant number of jobs in the national economy; therefore, she is
20 not disabled.  (Step Five).

21

22                                  **IV**

23    The Step Two inquiry is "a de minimis screening device to dispose
24 of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433
25 F.3d 683, 687 (9th Cir. 2005).  The Supreme Court has recognized that
26 including a severity requirement at Step Two of the sequential
27 evaluation process "increases the efficiency and reliability of the
28 evaluation process by identifying at an early stage those claimants

1  whose medical impairments are so slight that it is unlikely they would
2  be found to be disabled even if their age, education, and experience
3  were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.
4  Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly stringent
5  application of the severity requirement violates the Social Security
6  Act by denying benefits to claimants who do meet the statutory
7  definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir.
8  1994).
9
10      A severe impairment or combination of impairments within the
11  meaning of Step Two exists when there is more than a minimal effect on
12  an individual's ability to do basic work activities. Webb, 433 F.3d
13  at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see
14  also 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or
15  combination of impairments is not severe if it does not significantly
16  limit [a person's] physical or mental ability to do basic work
17  activities.").  Basic work activities are "the abilities and aptitudes
18  necessary to do most jobs," including physical functions such as
19  walking, standing, sitting, lifting, pushing, pulling, reaching,
20  carrying or handling, as well as the capacity for seeing, hearing and
21  speaking, understanding, carrying out, and remembering simple
22  instructions, use of judgment, responding appropriately to
23  supervision, co-workers and usual work situations, and dealing with
24  changes in a routine work setting. 20 C.F.R. §§ 404.1521(b),
25  416.921(b); Webb, 433 F.3d at 686.  If the plaintiff meets her burden
26  of demonstrating she suffers from an impairment affecting her ability
27  to perform basic work activities, "the ALJ must find that the
28  impairment is 'severe' and move to the next step in the SSA's five-

1  step process." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1160 (9th Cir.
2  2001) (emphasis in original); <u>Webb</u>, 433 F.3d at 686.

3

4       In Johnson II, this Court held the Commissioner's decision to
5  deny plaintiff's applications for disability benefits was not
6  supported by substantial evidence because the ALJ, in finding
7  plaintiff does not have a severe mental impairment, had not properly
8  assessed the opinions of plaintiff's treating physicians, Drs. Thacker
9  and Thomas.  A.R. 683-702.  This Court then remanded the matter so the
10 ALJ could properly assess these opinions, stating:  "Here, additional
11 proceedings can remedy [the ALJ's] erroneous Step Two determination
12 that plaintiff does not have a severe mental impairment, and afford
13 the ALJ an opportunity to go beyond Step Two in evaluating plaintiff's
14 mental condition."  A.R. 701.

15

16      On remand, the ALJ obtained further medical evidence regarding
17 plaintiff's physical and mental limitations, <u>see</u>, e.g., A.R. 732-832,
18 and then issued a new decision again finding plaintiff does not have a
19 severe mental impairment.  A.R. 657-65.  Despite this Court's specific
20 directions in remanding Johnson II, the ALJ once again failed to
21 properly address the opinions of treating physicians Drs. Thacker and
22 Thomas![11]  Having again failed to properly assess the opinions of

23  ────────────────

24      [11]  The Commissioner attempts to distinguish the ALJ's
25 blatant disregard of this Court's previous directions in
   Johnson II by stating:

26
27      In the new decision, the ALJ stated that he was
        incorporating by reference the discussion, analysis and
        summary of the prior medical exhibits, but <u>not</u> the
28      prior conclusions.  This statement shows that the ALJ

14

1  plaintiff's treating physicians, the Step Two finding that plaintiff

2  does not have a severe mental impairment is not supported by

3  substantial evidence for exactly the same reasons set forth in

4  Johnson II.

5

6                                    V

7       Although this Court would remand this matter to the SSA if it

8  were the first time plaintiff appeared before the district court, that

9
      ───────────────────────────────

10         did indeed consider the opinions of Drs. Thacker and
           Thomas and was not adopting what the district court had
11         termed, the erroneous Step Two determination. . . .

12
    Jt. Stip. at 11:11-15 (citations omitted).  Further, the
13  Commissioner argues:

14         While Plaintiff may argue that the ALJ's decision does
           not comply with the District Court's order for remand,
15         where substantial evidence supported the ALJ's
           conclusions, such error would not change the overall
16         correctness of the ALJ's determination.

17
    Jt. Stip. at 14:7-10.  These arguments completely miss the point.
18  To reject a treating physician's opinion, an ALJ is required to
    provide "'specific and legitimate reasons' supported by
19  substantial evidence in the record."  Reddick v. Chater, 157 F.3d
    715, 725 (9th Cir. 1998); Rollins v. Massanari, 261 F.3d 853, 856
20  (9th Cir. 2001).  In Johnson II, this Court explained why the
    ALJ's assessment of the opinions of Drs. Thacker and Thomas was
21  deficient and remanded the matter so the ALJ could either accept
    those opinions or provide specific and legitimate reasons for
22  rejecting them.  Given the deficiencies in the ALJ's prior
    assessment of the medical evidence, a statement in the ALJ's
23  latest decision that "[t]he discussions, analysis and summary of
    the prior medical exhibits . . . are incorporated by reference
24  but not the conclusions[,]" A.R. 659, with no further analysis of
    the opinions of Drs. Thacker and Thomas, simply does not remedy
25  the deficiencies noted in Johnson II, and no reasonable person
    could conclude otherwise.  Since the ALJ failed on remand to
26  properly address the opinions of Drs. Thacker and Thomas, once
27  again, his decision is not supported by substantial evidence.
28

is not the case here.  To the contrary, plaintiff filed her disability applications in 1996, and she has been before this district court on two prior occasions; yet, her claims still have not been fairly adjudicated.  Thus, benefits should be awarded because plaintiff "has already experienced lengthy, burdensome litigation." Vertigan v. Halter, 260 F.3d 1044, 1053 (9th Cir. 2001); see also Benecke, 379 F.3d at 595 ("Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" (quoting Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1398 (9th Cir. 1988))).

    Moreover, plaintiff has had three administrative hearings, and in each case, the ALJ made serious errors.  Under these circumstances, it would be unconscionable to again remand the case to the SSA. Vertigan, 260 F.3d at 1053-54; see also Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (awarding benefits where "[t]he disability determination has already taken ten years[,] . . . the record is unlikely to change [and] . . . the delay in this case has been caused by deficiencies that are not attributable to any error of the claimant"); Rooney v. Shalala, 879 F. Supp. 252, 262 (E.D. N.Y. 1995) ("Equity and good conscience preclude making [plaintiff, who had waited almost eight years,] wait any longer for the fair adjudication of her claim").  "Any other disposition of this case would needlessly prolong an administrative procedure that has, in large part at least because of the Administration's failings, dragged on for too long already." Fleshman v. Sullivan, 933 F.2d 674, 676 (8th Cir. 1991).

1  In fact, this Court afforded the SSA an opportunity to properly
2  address plaintiff's mental limitations upon remand, but the ALJ failed
3  to comply with this Court's Order and, once again, failed to give
4  specific and legitimate reasons for rejecting the opinions of
5  plaintiff's treating physicians; therefore, an award of benefits is
6  appropriate.  Giampaoli v. Califano, 628 F.2d 1190, 1196 (9th Cir.
7  1980); see also Filocomo v. Chater, 944 F. Supp. 165, 171 (E.D. N.Y.
8  1996)(finding when matter was previously remanded to SSA, which failed
9  to follow directives, reversal is appropriate remedy).

10

11      Finally, since "the Commissioner fail[ed] to provide adequate
12  reasons for rejecting the opinion of a treating or examining
13  physician, [this Court must] credit that opinion 'as a matter of
14  law.'"  Lester v. Chater, 81 F.3d 829, 834 (9th Cir. 1996) (citations
15  omitted); Edlund, 253 F.3d at 1160.  Crediting plaintiff's doctor's
16  opinion, vocational expert Corrine Porter testified at the most recent
17  administrative hearing that an individual such as plaintiff, with a
18  "moderate" limitation of concentration, persistence or pace, would be
19  unable to work.  A.R. 848-49, 852.  Thus, it is clear plaintiff cannot
20  work and is disabled.

21

22                               **ORDER**

23      IT IS ORDERED that plaintiff's request for relief be granted, and
24  the Commissioner shall award disability benefits to plaintiff under
25  Title II and the SSI program, 42 U.S.C. §§ 423, 1382(a).

26  DATE:  June 8, 2007            /s/ Rosalyn M. Chapman
                                   ROSALYN M. CHAPMAN
27                                 UNITED STATES MAGISTRATE JUDGE
   R&R-MDO\05-0793.mdo
28  6/7/07

                               17